DRAZ & CO. ET AL. *v.* UNITED STATES (No. 1875).[1]

1. BOTTLES OF WHISKY, WOODEN TOPS, OUTER FOILS, INSERT CORKS, AND LABELS FOR—NONREFILLABLE DEVICE—STIPULATION.

Where nonrefillable bottles of whisky were imported the stipulation of the parties that wooden tops, outer foil, insert corks, and labels, used for the proper packing and protection of the bottles, nonrefillable devices, and whisky during transportation, and not needed for the proper use of the bottles as containers during the consumption of the whisky, were parts of neither the bottles nor the nonrefillable devices was binding upon the Board of United States General Appraisers. They should not have been held dutiable under paragraph 83, tariff act of 1913.

2. NONREFILLABLE DEVICE FOR BOTTLES.

Where bottles of whisky were imported, fitted with nonrefillable devices to be used with the bottles during the consumption of the whisky to keep the bottles automatically closed, the devices are not nondutiable packing charges of the whisky but were correctly assessed with duty as parts of the bottles under paragraph 83, tariff act of 1913, which levies duty upon bottles.

United States Court of Customs Appeals, May 7, 1918.

APPEAL from Board of United States General Appraisers, Abstract 41186.

[Modified.]

Comstock & Washburn (Albert H. Washburn of counsel) for appellants.

Bert Hanson, Assistant Attorney General (John J. Mulvaney, special attorney, of counsel), for the United States.

[Oral argument Apr. 19, 1918, by Mr. Washburn and Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DEVRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

This case concerns the dutiability of a nonrefillable device attached to a whisky bottle at the time of its importation. It was assessed for duty under paragraph 83, tariff act of 1913, as a part of the bottle, the latter being treated as an entirety. The assessment was sustained by the Board of United States General Appraisers.

The facts as to this device are set out in a stipulation between the parties. The device is described as consisting of several parts and being attached to the neck of each bottle. It consists of three pieces of porcelain, a cork wafer and a metal sleeve which holds the porcelain and cork parts together and fastens them to the neck of the bottle. It is agreed by the stipulation that the outer foil, the wooden top, the insert cork, and labels are not parts of the device or the bottle.

The device serves the purpose of a stopper and is so adjusted that upon tipping the bottle the contents can be poured out. The proper function of the device is to prevent anything from being poured into the bottle. It is called, therefore, a nonrefillable device. The device is so constructed that a thin layer of cork approximately one-eighth of an inch thick, with a hole about one-fourth of an inch in diameter in the center, is placed immediately over the top of the

---

bottle. This piece of cork is held in place by means of an ingenious porcelain earthenware device which fits upon the cork and is in turn held to the bottle by means of an aluminum sleeve which surrounds it, the whole being so adjusted that the contents of the bottle may be readily poured out, but, when the bottle is placed upright on its base, all evaporation and leakage are stopped. This is accomplished by means of a small piece of earthenware inclosed in the earthenware device, which, when the bottle is upright, settles over the orifice in the cork, and, when the bottle is tilted, falls away from the cork into a chamber within the earthenware device, and allows the whisky to flow around it. This device renders it impossible to pour anything into the bottle. It apparently performs a different function from the ordinary stopper of a bottle.

Fitted into the orifice at the upper end of the earthenware device is a small cork about the size of a lead pencil and approximately three-eighths of an inch long. This is all that is removed to pour out the whisky.

Fitted over this cork, apparently to prevent injury to the device itself in shipping, is a wooden top.

The stipulation discloses that the outer foil and the labels were not treated as a part of the device by the appraiser, but that the wooden top, the insert cork, the sleeve, the cork wafer, and the porcelain parts, together with royalty paid on the patented device and the expense of assembling, were treated as parts of the cost of the bottle.

The board in this case considered the stipulation agreeing that the outer foil, the wooden top, the insert cork, and the label are not parts of the device or bottle as an attempt to stipulate the law in the case and ignored the stipulation in deciding the case.

We do not so construe this stipulation so far as it relates to the outer foil and the labels, but adopt the action of the appraiser and the assessor.

As to the wooden top and insert, it might possibly be open to the criticism that it stipulates what may be considered as a mixed question of law and fact, but an inspection of this insert cork and of the wooden top shows that the former answers the purpose of an ordinary stopper of a bottle, and the wooden top is evidently employed for protection of the bottle and the device in packing for shipment. When placed on the sideboard for use both of these could be removed from the bottle and thrown away. They serve no purpose in fitting the bottle for use or in its actual use, and we think the board was in error in refusing to respect the stipulation as it related to these two items.

The contention of the importers is that this case falls within the case of Hayes *v.* United States (150 Fed., 63), and that the device in

question should not be treated as a part of the bottle but as non-dutiable packing charges of specific duty goods—i. e., the whisky in the bottles.

The Government, on the other hand, contends that the bottle and the device should be treated as dutiable under paragraph 84 of the act of 1913 as bottles or bottle glassware composed in chief value of glass blown either in a mold or otherwise.

In T. D. 31969, in an opinion by Sharretts, General Appraiser, the merchandise in question consisted of flint-glass bottles known as dropping bottles. There were several varieties, some merely having a lip projecting from the rim, others a pipette inserted in the bottle, and still others having glass stoppers ground to fit the necks of the bottles, in which there were two grooves corresponding with those on the inner surface of the neck of each bottle. The stopper when properly adjusted permitted the fluid contents of the bottle to escape a drop at a time. By turning the stopper sufficiently to break the connection between the grooves, the bottles became the ordinary air-tight containers for volatile fluids.

The board held, upon consideration, that these articles fell within paragraph 97 of the act of 1909, corresponding to paragraph 83 of the present act, and not under paragraph 98, corresponding to paragraph 84 of the present act. This holding was apparently acceptable to the department, as appears by T. D. 32728, a letter of the Assistant Secretary of the Treasury to the collector of customs at New York.

Following this decision by the Board of General Appraisers and the interpretation by the Secretary of the Treasury corresponding therewith and approving the decision cited, the Congress reenacted in substantially the same terms the provisions of paragraphs 97 and 98 of 1909, containing provisions corresponding to those contained in paragraphs 83 and 84 of the present act. We think, therefore, that it can be said that there was a legislative adoption of the holding that a device having somewhat similar purposes to those here involved should be treated as a part of the bottle and dutiable under provisions like those of paragraph 83, and that this view not only militates against the position taken by the Assistant Attorney General in this case but also tends to sustain the holding of the board upon the main features of the case.

The reliance of the importers is upon the case of Hayes v. United States, supra, where what was involved was really a stopper to the bottle and certain labels. The articles there involved never became essential parts of the bottles in any other sense than that they were used with the bottles in the transportation of the goods. That case is distinguished from the present in that, in the instant case, the device adds to the character of the bottle, becomes a part of it in use, serves an added purpose other than and different from that of

the ordinary cork, enhances the value of the bottle for the use intended, and is as much a part of the bottle in use as any other portion.

We think the board's decision should be modified to the extent of directing a reliquidation, excluding the value of the wooden tops and the insert cork, and in all other respects, *affirmed.*