S. H. POMERANCE CO., INC., FOR ACCT.
OF NORMAN M. MORRIS WATCH CORP. *v.* UNITED STATES

No. 8073.—

Entry No. 700248.

Third Division, Appellate Term

(Decided January 9, 1952)

*Lane, Young & Fox* for the appellant.

*Charles J. Wagner*, Acting Assistant Attorney General (*Daniel I. Auster*, special attorney), for the appellee.

Before CLINE, EKWALL, and JOHNSON, Judges; CLINE, J., not participating

JOHNSON, Judge: This application for review is filed by the importer under the provisions of title 28 U. S. C. § 2636 (a) against the decision of the trial court reported in 21 Cust. Ct. 334, Reap. Dec. 7632. The merchandise, concerning which a reappraisement was taken, consists of 727 complete watches imported from Switzerland. It is one of the duties of the appraising officers in their reports to collectors of customs to advisorily classify imported merchandise for duty purposes as well as to report the value thereof. The values of the watch movements and the watchcases in question were separately computed upon the invoice for the reason that there is no provision in the Tariff Act of 1930 for complete watches, the watch movements being made subject to duty at specific rates under paragraph 367 (a), and the watchcases being separately dutiable at both specific and ad valorem rates under paragraph 367 (f), and so reported by the appraiser upon the invoice. The entered and the appraised prices of the watchcases and the watch movements are the same as the invoice prices. However, there appears upon the invoice a charge of 1 Swiss franc entitled "casing-up expenses" for each of the complete watches. The appraiser, in reporting the value of the merchandise, included one-half of such expense in the value of the watchcases, and the other half in the value of the movements. Upon such finding of the appraiser, an appeal for a reappraisement was filed.

At the trial below a stipulation entered into between counsel for both sides was admitted in evidence as exhibit 1, providing as follows:

\* \* \* that the issue presented is limited to the question of the application of a casing charge appearing upon the invoice; that if any part of such casing charge is

properly distributable to the watch case, the appraised value is the correct value under Section 402 (c) and (d) of the Tariff Act of 1930; that if no part of such casing charge is properly distributable to the watch case but in whole to the movement, then the value for duty purposes of the watch cases under said Section 402 (c) and (d) of the Tariff Act is the appraised value less that portion of such casing charge which the Appraiser has assigned thereto.

The only controversy before the trial court and this court is whether or not the casing-up expenses were properly distributed by the appraiser. The trial court, from the evidence and exhibits presented below, concluded that in the process of assembling the watchcases and watch movements—

* * * the casing charge represents time and effort which trained personnel expended on the cases as well as on the movements, and that a portion of that expense was properly included in the value of the watchcases by the appraiser.

Therefore, the court below held that the appraised values were the correct values of the watchcases as well as of the watch movements under the provisions of section 402 (c) and (d) of the Tariff Act of 1930.

Counsel for the appellant in assignment of errors contends that the trial court erred—

3. In stating in said decision that the witness, Norman M. Morris, testified that in the process of casing any one of the exhibits, it was necessary to expend time and effort on both the cases and the movements, unless such statement be modified, in accordance with the testimony of said witness, that no work whatsoever was done on the said watch cases, except to open the same in order that the movements might be inserted, all of the work otherwise being done in connection with the movements.

4. In finding and holding that the decision in the case of *Hayes* v. *United States*, 150 Fed. 63 (T. D. 27806), bears no analogy to the circumstances of the instant case, and in basing such conclusion on a statement of the court in that case which was in answer to contentions of the Government, and not giving proper consideration to the basic reason set forth in said decision for the holding that glass bottles, being provided for separately whether filled or empty, must respond for duty purposes to the definition of a glass bottle irrespective of any expenses attaching to the placing of contents in the bottle and properly sealing it to protect such contents from extraneous substances and from the effect of contact with the atmosphere.

5. In not finding and holding that the said decision in *Hayes* v. *United States*, *supra*, was directly in point and that the reasoning of the court in that case was controlling.

6. In its reasoning that if the importer's contention were sustained, watch cases when imported with movements uncased would be appraised at the same value as corresponding watch cases containing movements when imported, and that it was its opinion that such was not the intent of Congress, notwithstanding the plain language of the statute that imported watch cases, whether or not containing movements, should be treated exactly the same for duty purposes.

7. In seemingly giving importance, in rendering the decision in the instant case, to the fact that complete watches were imported and constitute new articles, notwithstanding the fact that the definite language of Paragraph 367 provides

that for duty purposes the watch case and the movement therein shall be considered as separate and distinct articles and each treated as if imported separately.

8. In not definitely finding that the work performed in casing the movement was entirely done with respect to the movement itself and that such movement could be inserted in the case and removed therefrom without any work, except that necessary to open the case and reclose it, the same as would be necessary in inserting merchandise into any container, such as glass bottles, metal drums, etc.; and that, therefore, any charge for the work necessary to insert such movement in the case should be wholly applied to the movement and no part thereof apportioned to the case.

The brief filed by appellant's counsel draws attention to paragraph 367 which provides for watch movements, whether or not in cases, and also for all cases suitable for the enclosure of any of the movements provided for in the paragraph, whether or not containing such movement. It is argued by counsel that said paragraph draws no distinction between a watchcase imported as such and a watchcase imported with a movement therein, that is, a complete watch. A comparison is then made by appellant's counsel between the provision for watch movements and watchcases and tariff provisions for cylindrical and tubular tanks or vessels, whether full or empty, contained in paragraph 328, and for glass bottles, whether full or empty, contained in paragraph 217.

The case of *Hayes* v. *United States*, 150 Fed. 63 (T. D. 27806), upon which the appellant relies, involved an importation of olive oil in bottles. The olive oil paid a specific rate of duty but the bottles, under the tariff act then in force, exacted a duty of not less than 40 per centum ad valorem. The corks, capsules, and labels were treated by the collector as parts of the bottles at the 40 per centum rate. Other charges were apportioned *pro rata* between the value of the oil and the value of the bottles, plus the value of the corks, capsules, and labels, a duty being assessed upon the part of such charges which was apportioned to the bottles. The court held that the charges for corks, labels, capsules, and wiring are expenses incident to placing the olive oil in condition for market. In its decision, the olive oil was noted by the court as the principal article of importation, and the bottles, as well as the corks, labels, capsules, reed coverings, and other packing for which charges appeared, were regarded as incidents to the preparation and importation of the olive oil.

In the case here pending, the importation consists of watches. The articles were shipped and imported as watches, not as watch movements and watchcases, as argued by appellant's counsel. The watchcases were not a necessary incident to the importation of the watch movements, as were the bottles used in connection with the importation of olive oil in the *Hayes* case, *supra*. We are of the opinion that the lower court was not in error in holding that the *Hayes* case,

*supra*, is distinguishable from the case at bar, and that the circumstances giving rise to the controversy herein do not bear any analogy to the questions there presented.

The record below includes an affidavit of Adolphe E. Vallat of Societe Anonyme Louis Brandt & Frere, Omega Watch Co., of Bienne, Switzerland, the manufacturer of the watch movements, admitted in evidence as exhibit 2, and five watches of various kinds involved in the importation, admitted as exhibits 3, 4, 5, 6, and 7. Norman M. Morris, the actual importer of the watches, testified at great length on behalf of the importer in connection with the sample exhibits relative to the work performed relative to the casing charge being entirely upon the movements and not upon the cases. Aaron Balmages, a watch expert employed in the appraiser's stores, testified on behalf of the Government also as to the allocation of such charge.

The court below fairly summarized the testimony of these witnesses and it will only serve to unduly lengthen this opinion to resummarize it here. The court concluded—

From an examination of the testimony of witnesses Morris and Balmages, *supra*, it is at once obvious that a great deal of labor is expended in resolving the watchcases into their parts before inserting the movements, and later in restoring the cases to their completed form to make finished watches.

Further along in its opinion, the lower court succinctly presented the reasons why it concluded that the allocation of the charges by the appraiser was correct, stating as follows:

\* \* \* The casing charge, as its name denotes and as is borne out by the record before me—no other meaning having been attributed to those words—is composed of the labor cost of combining the watch movements and the watchcases in order to make completed watches. The record before me indicates that this work is done by trained workers and it is logical to conclude that all steps performed in assembling the watch movements and the watchcases form a part of said casing charge. The watchcases are delivered to the movement manufacturer in a completed form and preparatory to insertion of the movements it is necessary that the cases be taken apart. The process of assembly entails the combining of the various parts of the cases with the movements, and, where necessary, clipping the stems to the proper length and attaching one end to the movements; then nipping the opposite ends of the stems and affixing the crowns to them. As a final step, the cases are closed, which in the instance of exhibit 7 merely entails snapping the back of the case in place; in exhibits 4 and 6 it involves attaching the bezel; and as to exhibits 3 and 5 it requires tightening the back of the cases with a special key as a waterproofing measure. Truly it can be said that a watch assembler in the performance of his duties devotes considerable effort and time to the watchcases as well as to the watch movements.

From a careful examination of the evidence, we are of opinion that the work performed in combining the watchcases with the watch movements necessitated that time and labor be expended upon the cases as well as the movements. Therefore, we find assignment of errors numbered 3, 4, 5, and 8 without merit.

As to the errors in assignments 6 and 7, it is true that in the language of the tariff act the watchcases as well as the watch movements are principal articles of importation. The movements are ready for market without being cased and the cases are ready for market without having movements inserted therein. Therefore, the question arises whether or not the apportionment of the charge between such independent articles of commerce as are here at issue may be legally made, inasmuch as such charge was made only by the movement manufacturer.

A careful examination of the evidence discloses that in the affidavit (exhibit 2) of Adolphe E. Vallat it is stated that the watchcases, in which movements were cased, were purchased from Swiss case manufacturers, and that the "freely offered for sale" prices of the case manufacturers to all buyers, which were not regulated in any manner by any official orders, are the prices shown on invoices to the importer. However, the affidavit also discloses that the Swiss Federation of Associations of Watch Manufacturers requires that a minimum profit be added of 25 per centum (20 per centum on gold cases)—

* * * that is to say, in the breakdown on our invoices of the prices at which the complete watches were sold to Norman M. Morris Watch Corp. *the amount assigned to the cases truly represents the freely offered prices of the watch case manufacturers plus 25% [20%] which we have added as a minimum profit;* * * * [Italics not quoted.]

The facts here presented, therefore, establish that the watchcases were not sold to the importer herein at the freely offered price for watchcases. The manufacturer of the movements, not the importer, purchased the cases at such freely offered price. It is also true that the watch movement manufacturer also purchased other appurtenances necessary for a complete watch from other manufacturers. The various parts were then assembled into complete watches. On resale by the movement manufacturer, a profit was added upon these cases and other parts as well as upon the movements. The complete watches sold by the movement manufacturer to the importer are the articles of commerce with which this reappraisement side of the court is dealing. The movement manufacturer included "casing-up expenses" as part of the value of the complete watches which were sold to the importer. In the opinion of the court, it is immaterial whether the work performed in casing the movements was entirely in connection with the movements or not. Nor is it material whether or not Congress, in its wisdom, has separately classified watchcases and watch movements. As far as the values of the watches are concerned, the charge in question was affixed by the movement manufacturer to the articles sold, and the appellant has, in our opinion, failed to establish that the appraiser erred in his allocation of such charge. Had it been established that the watchcases were purchased by the importer herein and that the only connection with the shipper

was assembling therein the movements, there might have been merit to appellant's assignment of errors 6 and 7.

On the record before the court, the facts presented are:

1. The issue is limited to the application of "casing-up expenses" appearing upon the invoice to watch movements or watchcases.

2. The "casing-up expenses" amount to 1 Swiss franc.

3. The appraiser allocated one-half of such expense to the watch movements and one-half to the watchcases.

4. By agreement of counsel for the parties herein (exhibit 1) "if any part of such casing charge is properly distributable to the watch case, the appraised value is the correct value under Section 402 (c) and (d) of the Tariff Act of 1930."

5. The watchcases as well as the watch movements were sold by the watch movement manufacturer as complete watches.

This court concludes as a matter of law that the "casing-up expenses" were properly allocated by the appraiser. The decision and judgment of the trial court are accordingly affirmed.

Judgment will be entered accordingly.