ZEMANSKY *v.* UNITED STATES (No. 2205).[1]

1. EVIDENCE—BURDEN OF PROVING IDENTITY OF AMERICAN GOODS RETURNED.

An importer who seeks entry of goods free of duty under paragraph 404, tariff act of 1913, as American goods assumes the burden of proving that they are such goods.

2. AMERICAN GOODS RETURNED—COMPLIANCE WITH REGULATIONS.

Paragraph 404, tariff act of 1913, grants entry free of duty to goods of American manufacture, but only upon condition of compliance with the Treasury Department's regulations, which are set out in articles 332, 333, and 334, Customs Regulations 1915, as amended by T. D. 38226. The collector has no authority to waive the filing of the oath required by these regulations. The existence of such circumstances as render proof of identity difficult or impossible does not obviate the

[1] T. D. 39663.

necessity of furnishing such proof but deprives the importer of the privilege accorded by the paragraph. Appellant, fearing robbery, brought into Tia Juana, Calif., from Tia Juana, Mexico, a miscellany of watches and jewelry, claiming that they were of American make and had been pawned to him by American visitors. His claim for entry free of duty under paragraph 404, tariff act of 1913, as American goods returned was properly denied for noncompliance with the regulations.

## United States Court of Customs Appeals, May 24, 1923.

APPEAL from Board of United States General Appraisers, Abstract 45177.

[Affirmed.]

*Frank L. Lawrence* (*Martin T. Baldwin* of counsel) for appellant.
*William W. Hoppin*, Assistant Attorney General (*John A. Kemp*, special attorney, of counsel), for the United States.

[Submitted without oral argument May 10, 1923.]

Before MARTIN, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges.

BLAND, Judge, delivered the opinion of the court:

The goods in question—watches and jewelry—were brought from Tia Juana, Mexico, to Tia Juana, United States of America, a subport of San Diego, by appellant on at least two different occasions in the month of August, 1920. Entry declarations of the goods in two separate lots were made by appellant, who was one of the managers of the Tia Juana Country Club, and in his capacity as such carried said goods into the United States. Appellant and his associates conducted a casino and gambling establishment at Tia Juana, Mexico, and the goods in controversy were taken as pledges for money loaned to American visitors who patronized the institution. The goods were removed to the United States on account of rumors of attack by insurgents upon the country club.

There is considerable evidence showing fraud or at least gross irregularity and a possible attempt to defraud the Government, which for the purposes of this case it is not necessary to detail here. Appellant, after carrying the goods across the line, deposited them with banking institutions in San Diego. It was discovered later by a customs agent, and upon advice from the Treasury Department, the goods were not seized, but appellant was permitted to make entry declaration of them. Upon a portion of the entries, 30 per cent duty was levied and on the remainder a 60-per cent duty.

It is the contention of appellant that the goods should have been admitted free of duty under the provisions of paragraph 404 of the tariff act of 1913, which reads as follows:

404 (free list). Articles the growth, produce, or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means; * * * but proof of the identity of such articles shall be made under general regulations to be prescribed by the Secretary of the Treasury, * * * and if any such articles are subject to internal revenue tax at the time of exportation, such tax shall be proved

to have been paid before exportation and not refunded; * * * *Provided*, That this paragraph shall not apply to any article upon which an allowance of drawback has been made, the reimportation of which is hereby prohibited, except upon payment of duties equal to the drawbacks allowed; or to any article manufactured in bonded warehouse and exported under any provision of law.

The general customs regulations in force on that date applicable to the paragraph were as follows:

ART. 332. *Articles included.*—The articles enumerated in paragraph 404 of the act of October 3, 1913, are entitled to free entry upon production of evidence of identity in accordance with these regulations, provided internal revenue tax was not remitted or drawback allowed on exportation, or that exportation was not made from bonded manufacturing warehouse.

ART. 333. *Requirements on entry.*—The following documents shall be filed on entry or bonds given for the production thereof:

(*a*) A declaration of the foreign shipper before the American consular officer on Consular Form 129; if the value is more than $100, which will be accepted in lieu of a consular invoice.

(*b*) A declaration of the owner, importer, consignee, or agent on Customs Form 3311.

(*c*) A certificate (Customs Form 4467) of the collector of customs at the port from which the merchandise was exported from the United States will be issued upon application of the importer or of the collector at the importer's request, and be mailed direct to the port at which it is to be used and its issuance noted on the export manifest. If the merchandise has been exported from the port at which the entry is made, exportation must appear upon the customhouse records.

If the value exceeds $100, and the appraising officer's report does not affirmatively show that the merchandise is of domestic manufacture or production, the collector may require the importer to furnish within three months after the date of the demand therefor, in addition to the declaration filed on entry, an affidavit (Customs Form 3311) of the owner or ultimate consignee, or other evidence to identify the returned merchandise as of American manufacture or production.

ART. 334. *Waiver of certificate of exportation.*—The collector may waive the production of a certificate of exportation or cancel the bond given therefor when satisfied from an examination that the goods are in fact of domestic origin, and it appears from an affidavit of the importer, consignee, or agent that it is impracticable to obtain such certificate, because the goods were exported in small lots at different times, or for any other good reason. The production of a certificate of exportation should not be waived unless the collector is satisfied that no drawback was paid upon the exportation of the merchandise. (Customs Regulations of 1915, as amended in T. D. 38226.)

The appellee claims, first, that the merchandise was in the possession and owned by the Country Club of Tia Juana, Mexico; second, that the protestant's claim that the goods were American goods is not borne out by the testimony; third, that in any event, the Treasury regulations as to the entry of American goods returned were not complied with.

While the evidence seems to support the first contention of the Government, the decision of the court on the remaining questions in the case will render it unnecessary to decide the first one.

The evidence clearly shows that a large portion of the goods was not American goods, but clearly goods of foreign make. Of other portions of the merchandise there was no satisfactory proof as to the

make or the origin of the goods. The burden was upon the appellant to make satisfactory proof that the goods were American goods returned.—United States v. Saunders (6 Ct. Cust. Appls., 86; T. D. 35337). That the merchandise was not considered American goods returned is shown by the statement of liquidation of entry signed by the deputy collector of customs at San Diego, Calif., dated December 11, 1920. The meager and unreliable proof of American origin is not sufficient to overcome the collector's finding.—United States v. Ranlett (172 U. S. 133; T. D. 23324; G. A. 5011).

Goods of foreign make, though once admitted into the United States with duty paid, can not be readmitted without payment of duty. Goods of American make, if certain regulations and conditions are complied with, may be admitted free into the United States. This is a privilege granted to the importer, and he must strictly comply with the regulations if he is to obtain the benefit of the Government's liberality.—Max J. Bernheim's case, (G. A. 7713, T. D. 35330); Vaccaro Bros.' case (G. A. 7957, T. D. 36655); Kingsland's case (G. A. 8295, T. D. 38168); Arthur I. Harris's case (G. A. 8348, T. D. 38437): United States v. Morris European & American Express Co. (3 Ct. Cust. Appls. 146; T. D. 32386); Stone & Co. v. United States (7 Ct. Cust. Appls. 439; T. D. 37009); United States v. Reid (10 Ct. Cust. Appls. 85; T. D. 38357). There was no apparent attempt to comply with the regulations by filing the affidavits required. The matter also seems to have been ignored in the trial of the case.

The collector had no authority to waive the filing of the oath.—United States v. Rettig et al. (2 Ct. Cust. Appls. 537; T. D. 32254).

In Bausch & Lomb's case, G. A. 5539 (T. D. 24909), the board said:

That where the Secretary of the Treasury is specifically authorized by any paragraph of the tariff law to make regulations for its administration, those regulations, when once made, unless in conflict with the letter or spirit of the law, have the same force and effect as if written into the statute.

It can not be successfully urged that the collector waived the certificate of exportation or other pertinent evidence showing the American make of the goods. After long delay, he found that they were not American-made goods. It is contended by appellant that it is impossible to furnish the certificate of exportation required by article 333; that the merchandise consisted of hundreds of small articles which had been taken out of the United States by hundreds of individuals at different times, and that few if any of these persons were known to Zemansky. This unfortunate condition would make it more necessary for appellant to furnish further proof of identity of the American make of the goods. But the difficulty in obtaining proof is not to be charged to the Government; it is the misfortune of the importer who seeks to take advantage of the privilege granted him.

It is not contended that the regulations of the Treasury Department were unreasonable or unjust; it is only contended that their application to appellant's case is unreasonable, and that it is impossible for him to comply with them under his unfortunate circumstances. It would be a dangerous policy for the collector to waive or attempt to waive compliance with their terms in this and similar cases, since it would be conducive to the perpetration of frauds against the Government.

The decision of the General Appraisers is *affirmed.*